AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
District of Oregon

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| | ) | Case No.  6:20-mj-00096-MK |
| Michael Lee Fry | ) | |
| *Defendant(s)* | ) | |

## CRIMINAL COMPLAINT
### BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  January 4, 2019  in the county of  Douglas  in the  District of  Oegon , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1), (b)(1)(A)(viii) | Possession with Intent to Distribute 500 grams or more of methamphetamine |

This criminal complaint is based on these facts:

Please see the affidavit of DEA Special Agent Juan Sierra, which is attached hereto and incorporated herein by this reference.

☑ Continued on the attached sheet.

/s/ Juan Sierra
*Complainant's signature*

Juan Sierra, Special Agent, DEA
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at  12:09pm  a.m./p.m.

Date:  April 23, 2020

*Judge's signature*

City and state:  Eugene, Oregon                Mustafa T. Kasubhai, U.S. Magistrate Judge
*Printed name and title*

DISTRICT OF OREGON, ss:  AFFIDAVIT OF JUAN SIERRA

**Affidavit in Support of a Criminal Complaint and Arrest Warrant**

I, Juan Sierra, being duly sworn, do hereby depose and state as follows:

**Introduction and Agent Background**

1. I am a Special Agent (hereinafter "SA") with the United States Drug Enforcement Administration (hereinafter "DEA") currently assigned to the Eugene Resident Office, United States Department of Justice.  As such, I am empowered by Title 21, United States Code, Section 878 to make arrests and obtain and execute warrants.  My job assignment includes, but is not limited, to the investigation of violations of Title 21, United States Code, Sections 841(a)(1), 846, 843(b), and 856, which includes the detection, identification, and apprehension of those individuals involved in narcotics trafficking offenses.

2. I have been employed as a DEA Special Agent since April 2018.  During my employment as a Special Agent, I have participated in numerous investigations involving the possession, cultivation, manufacture, transportation, and distribution of controlled substances.  Prior to joining the DEA, I was a police officer with the Lubbock Police Department, in Lubbock, Texas, since October 2013.  As an officer, I conducted preliminary criminal investigations, responded to emergency calls and the interdiction of narcotics,

3. This is an affidavit in support of a criminal complaint and arrest warrant for **Michael Lee Fry** (hereinafter "Fry") for possessing with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(viii).

4. The facts set forth in this affidavit are based on the following: my own personal knowledge; knowledge obtained from other individuals during my participation in this

investigation, including other law enforcement officers; my review of records related to this investigation; communications with others who have knowledge of the events and circumstances described herein; and information gained through my training and experience. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of this criminal complaint and arrest warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation.

## Applicable Law

5.     Title 21 U.S.C. § 841(a)(1) provides, in pertinent part, that it is unlawful for any person to knowingly or intentionally distribute or possess with intent to distribute a controlled substance. Title 21 U.S.C. § 841 (b)(1)(A)(viii) provides that any person who distributes or possesses with the intent to distribute 50 grams or more of methamphetamine, or 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, shall be sentenced to a term of not less than 10 years or more than life and a fine not to exceed $10,000,000.

## Statement of Probable Cause

6.     On January 4, 2019, detectives with the Douglas Interagency Narcotics Team (hereinafter "DINT") were conducting surveillance in Dillard, Oregon after receiving information about Michael Lee Fry being in the area and possibly in possession of a large amount of methamphetamine. While driving in the area, DINT detectives located a white Audi sedan parked at a store, with extensive damage to the rear passenger side door, and immediately recognized Fry walking toward the vehicle. DINT detectives were familiar with Fry from previous police investigations and were aware of Fry having an active arrest warrant.

7. Detectives attempted to follow Fry after he left the parking lot in the vehicle, but eventually lost sight of the vehicle. DINT detectives contacted officers from Winston Police Department as well as Oregon State Police and provided them with descriptions of the white Audi. A short while later, DINT detectives were notified by Oregon State Police Trooper Kyle Bachmeier about a white passenger vehicle that appeared to have recently crashed near the 2000 block of Callahan Road, approximately ten to fifteen minutes northwest of Dillard, Oregon. Trooper Bachmeier also advised that a passerby had reported a male and a female standing near the car with a small dog.

8. DINT detectives drove to the area of the reported crash and immediately recognized the crashed white sedan as being the same white Audi sedan observed at the store. Detectives observed a female standing outside of the car, looking up a nearby hill. The female subsequently provided information on Fry and is referred to hereinafter as witness-1 ("W-1").

9. I have reviewed W-1's criminal history which includes, multiple felony convictions for possession of methamphetamine, over several years; as well as arrests for probation violations, contempt of court, possession of stolen vehicles, and possession of heroin.

10. DINT detectives drove past the vehicle and met with Trooper Bachmeier a short distance away. After speaking with Trooper Bachmeier, DINT detectives returned to the vehicle but did not observe anyone by the vehicle. Upon walking up to the vehicle, DINT detectives heard a female voice from the timber saying, "I'm right here." DINT detectives then observed W-1 who was previously standing by the car, walking down the hill that detectives had observed her looking at when they passed by.

11. W-1 stated her and her friend, who she described as a female, had gotten their car stuck and that W-1's friend had left walking down the road to get help. W-1 further provided a name for her friend, and gave the name of a female. Detectives asked W-1 what she was doing in the timber to which she replied that she was just walking around. DINT detectives then challenged W-1's story and told her detectives already knew Fry was with W-1. Detectives then asked W-1 where Fry was. W-1 paused for a moment and told detectives Fry had gone into the woods, but refused to state which direction Fry went. W-1 eventually stated Fry had gone down the hill, but then stated Fry had gone down the gravel road that the vehicle was stuck on.

12. DINT detectives then called Roseburg Police K-9 Officer Blake Cordell and requested his assistance in searching for Fry in the area of the crash. While waiting for the K-9 officer, detectives began asking W-1 additional question about Fry. W-1 stated she did not know if Fry had a weapon on him at that time, but that he was carrying a green case. W-1 further described the case as bright green in color and looked like a safe type case. W-1 used her hands to describe the size of the case and detectives noted the case appeared to be about one foot by one foot in size. W-1 stated Fry had taken the case out of the vehicle, when he left on foot.

13. After Officer Cordell arrived, he deployed his K-9 partner Nike and began searching the area for Fry. The K-9 officer began tracking a scent up the grassy skid road W-1 was observed walking down. While tracking up the road, detectives observed a bright green locking case at the base of a tree stump. Approximately 50 yards up the road, past the bright green case, officers located Fry hiding under some brush at the base of a fallen tree. Fry was placed under arrest without incident.

14.     When collecting the green case, detectives observed that while the rest of the area was wet and covered in fir tree needles, the green case was dry and clean. Fry was subsequently searched and found to be in possession of $3,205 dollars of US Currency, which Fry stated was from the sale of a truck. Fry refused to speak with detectives at that time.

15.     While on scene, W-1 asked detectives to retrieve her personal items, a back pack and cell phone, from the white sedan, that was going to be towed. W-1 stated she did have a small amount of methamphetamine inside the back pack and would take the charge for it, as long as she could have her personal items. W-1 consented to detectives searching her back pack and several syringes, a small amount of methamphetamine in a baggie, and glass pipes with white residue were located inside. W-1 was asked where Fry's phone was located. W-1 stated it was either in the car or on his person. When W-1 was told Fry did not have a phone on him at the time of his arrest, W-1 walked with detectives up the hill where she was walking initially. At that time, detectives located a pack of cigarettes and a cell phone lying on the ground, which were then seized as evidence. See Exhibit 1, a diagram which shows the location of the car, the phone, the case and Fry.

16.     W-1 was cited and released from the scene and was transported back to Roseburg, Oregon due to not having a ride. While being transported, W-1 further stated that she knew Fry had about five pounds of methamphetamine inside the green case. W-1 stated she and Fry were on their way to sell methamphetamine to someone she did not know, up on Callahan Road. W-1 further stated that she did not know many people and Fry was going to introduce W-1 to someone to sell drugs to. As a result of this incident, W-1 was subsequently convicted for possession of a controlled substance.

Page 5 – Affidavit of Juan Sierra                                        USAO Version Rev. April 2018

17. A subsequent State of Oregon search warrant was obtained for the bright green case on January 7, 2019, and executed on that same day. The case was described as a bright green and black composite "STR8" locking case, ten inches wide by 14 inches long. A search of the green case revealed four large Ziploc style bags containing approximately 454, 457, 342, and 420 grams of a white crystalline substance believed to be methamphetamine, two small pieces of a dark substance believed to be heroin, a $20 dollar bill, an envelope containing vehicle registration tags and a syringe with fluid inside. The white crystalline substance was presumptively field tested from one of the four bags, and a positive result for the presence of methamphetamine was obtained.

18. On January 9, 2019, a State of Oregon search warrant was obtained and executed for the cell phone believed to belong to Fry from the day of his arrest. Upon searching the phone, detectives located incoming messages which referred to the phone's owner as "Mikey." There were also outgoing messages indicating "Mikey" was the owner and user of the phone. Detectives determined "Mikey" was Fry. Some of the messages observed on the phone were as follows: On January 3, 2019 Fry sent a text to "Steve Sugarin" which stated, "Call me bro. its mikey. I got apologize for the other day. I got a lot of those car parts to get rid of before I go in. im with craig opals daughter Jodie and moe. Would like to come see you." After a few back and forth messages on Sugarin's location, Sugarin replied with, "Can u bring back a qp now ive got the money if not we can talk and give Jodie my number thank." It is believed the "qp" in this message is indicating a "quarter pound" (approximately four ounces) which is a common amount sold by drug traffickers. There were also incoming messages from 541-537-3472 to Fry which stated, "hey its austin I got some need call me back"; "Hey they are in burg not mobile I guess

my bad but they also have this platinum diamond ring (ring picture attached) and new Verizon Galazy note9"; and "Hey I got 500 call me back asap." Drug users and dealers often use general terms in their messages, such as "need" as a way to tell the dealer they are looking to buy drugs.

19. Detectives also located Facebook Messenger app conversations from Fry's Facebook account to a person which stated the following: "I need u sara"; "im on the run"; "please call me on regular phone. 458-221-XXXX" "look. I really need your help. I got 10 large motors I just bought before I had a huge blow out with olladey. Ill tell u when I see u but I trust u." It is believed the term "10 large motors" in those messages is indicating 10 pounds of methamphetamine. A common large motor in the automotive industry is a 454 cubic inch engine and a pound of methamphetamine in grams is also approximately 454 grams.

20. Michael Fry has a 2003 felony conviction for delivery and possession of a controlled substance, and a 2007 and 2008 felony conviction for possession of methamphetamine.

### Conclusion

21. Based on the foregoing, I have probable cause to believe, and do believe, that **Michael Lee Fry** possessed with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(viii). I therefore request that the Court issue a criminal complaint and arrest warrant for **Michael Lee Fry**.

22. Prior to being submitted to the Court, this affidavit, the accompanying complaint and the arrest warrant were all reviewed by Assistant United States Attorney (AUSA) Jeffrey Sweet, and AUSA Sweet advised me that in his opinion the affidavit and complaint are legally

and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrant.

### Request for Sealing

23.     It is respectfully requested that the Court issue an order sealing, until further order of the Court, all papers submitted in support of the requested criminal complaint and arrest warrant. I believe that sealing these documents is necessary because the information to be seized is relevant to an ongoing investigation, and any disclosure of the information at this time may endanger the life or physical safety of an individual, cause flight from prosecution, or cause destruction of or tampering with evidence. Premature disclosure of the affidavit, the criminal complaint, and the arrest warrant may adversely affect the integrity of the investigation.

/s/ Juan Sierra, per Rule 4.1
_____
JUAN SIERRA
Special Agent
Drug Enforcement Administration

Sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at __12:08__pm a.m./p.m. on __April 23, 2020__.

_____
MUSTAFA T. KASUBHAI
United States Magistrate Judge